GEORGE O. AND MARIE RAGNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71595. Filed April 29, 1960.

*Robert H. Sabel, Esq.,* for the petitioners.
*Leo A. Burgoyne, Esq.,* for the respondent.

#### OPINION.

PIERCE, *Judge:* Respondent determined a deficiency in the income tax of petitioners for the year 1956, in the amount of $9,402.51; and also an addition to tax under section 6654 of the 1954 Code, in the amount of $660.17, for failure to pay estimated income tax.

The sole issue raised by the pleadings is whether an amount of $17,500 which the principal petitioner received in 1956, as the result of settlement of a lawsuit effected by a partnership of which he was a member, "represents compensation [to said petitioner] for loss of profits," which is taxable to him as ordinary income.

All of the facts have been stipulated, and are so found. Such facts may be summarized as follows.

The petitioners, George O. and Marie Ragner, are husband and wife residing in Pittsburgh, Pennsylvania. They filed a joint income tax return for the year involved, with the district director of internal revenue at Pittsburgh. The wife is a party herein solely by reason of her having joined with her husband in filing said joint return.

Petitioner George O. Ragner (hereinafter called the petitioner) was at all times material to this proceeding a member of a partnership known as George O. Ragner and Associates. The other partners were James B. Kelly, Jr., Charles L. Norton (now deceased), and John C. Joseph.

Beginning in early September 1952, said partnership entered into simultaneous negotiations with Garfield Fuel Company and with Pennsylvania Coal and Coke Corporation, both of which were Pennsylvania corporations. The purpose of these negotiations was to make arrangements: (1) Whereby said partnership might acquire from the Garfield Company, interests in certain coal-bearing lands in the State of Pennsylvania; and (2) whereby the partnership might then enter into an agreement with the Pennsylvania Corporation for the latter's exploitation and use of the property interests to be so acquired. Partner Kelly did most of the negotiating on behalf of the partnership. The principal results were as follows.

On December 19, 1952, the partnership entered into a written contract with the Garfield Company, under which said corporation agreed to sell and convey to the partnership the following interests in lands located in the State of Pennsylvania: (1) All of one described tract of land, containing about 50 acres; (2) all the coal of whatever kind, "except the 'D' seam of coal," in and underlying another described tract of about 50 acres; (3) all the coal of whatever kind, in and underlying 21 other described tracts; and (4) mining rights and privileges in respect of all the 22 last-mentioned tracts. The contract provided that, in consideration for such conveyances, the partnership would pay to the grantor the sum of $30,000 in three equal annual installments. Warranty deed and possession of the premises were to be delivered to the partnership within 30 days from the date of the contract. The instrument was executed by the corporation, and also in the name of the partnership by all its above-named partners.

On January 3, 1953, the partnership and the Pennsylvania Corporation executed the following memorandum agreement, which reflected a prior oral understanding between the parties that was made shortly before execution of the above-mentioned purchase contract between the partnership and the Garfield Company:

PENNSYLVANIA COAL AND COKE CORPORATION
30 Pine Street
New York 5, N.Y.

*January 3, 1953*

George O. Ragner & Associates,
Union Trust Building,
Pittsburgh, Penna.

Gentlemen:

We are willing to make a five (5) year lease—purchase contract with you for approximately 1000 acres of mineral rights, and approximately fifty (50) acres of surface lands formerly owned by the Garfield Fuel Company located near Bolivar, Pennsylvania, on the following basis:—

1.—10 cents per gross ton payable monthly on all merchantable coal mined and shipped by us.

2.—Minimum monthly rentals payment of $833.00 (per month for a 5 year period, commencing April 1, 1953,) all monthly rentals to apply against tonnage royalties or future purchase price.

3.—Two (2) cents per gross ton wheelage royalty on all outside coals transported through your properties.

4.—Title to 1000 acres of mineral rights will pass to us upon payment of total royalties of $137,500.00, (it being understood that we are paying $137.50 per acre, and if there is more or less than 1000 acres of mineral rights, the price will be adjusted accordingly).

5.—An option to renew this contract for an additional five year period on the same terms as above, but the purchase price is to be increased to $175,000.00.

6.—This offer expires within 90 days from today if proper title to this coal is not provided by you.

Very truly yours,

PENNSYLVANIA COAL & COKE CORPORATION
/s/ Harold Wickey
HAROLD B. WICKEY,

HBW–r                                    *Vice President*—Operation.

The above memorandum of agreement is accepted by us, and we hereby acknowledge the receipt of one dollar to bind this agreement.

GEORGE O. RAGNER & ASSOCIATES,
/s/ George O. Ragner
GEORGE O. RAGNER
/s/ J. B. Kelly, Jr.
J. B. KELLY, JR.
/s/ John Joseph
JOHN JOSEPH

/s/ Charles L. Norton
            *per JJ*
· CHARLES L. NORTON

On or before April 1, 1953, "the consideration required" by the above-mentioned contract between the partnership and the Garfield Company was paid; and on the latter date, the Garfield Company executed and delivered to the partnership a deed for the property interests described in said purchase contract. The deed which named George O. Ragner and Associates as the grantee, recited that the conveyance therein made was "in consideration of Thirty Thousand ($30,000.00) Dollars, in hand paid, the receipt whereof is hereby acknowledged."[1]

Petitioner George O. Ragner supplied and paid from his own funds the consideration paid by the partnership to the Garfield Company for the aforesaid coal lands. Such payment was made by said petitioner pursuant to an agreement between him and the other partners of George O. Ragner and Associates, "that he make such payment, and that he own and receive in his own right all monies

---

[1] The above recital in the deed appears to indicate that the full $30,000 was paid on or before delivery of the deed on Apr. 1, 1953, notwithstanding that the contract of purchase had provided for payment of this amount in three annual installments. Also the petitioners in their principal brief, and the respondent in his reply brief, have based their arguments on the premise that the full $30,000 was paid.

paid by Pennsylvania Coal and Coke Corporation under the agreement of January 3, 1953 to the amount of $30,000."

The Pennsylvania Corporation never performed any of the terms of its memorandum agreement of January 3, 1953; and as the result, in September 1953 the partnership filed a complaint in assumpsit against the Pennsylvania Corporation in the Court of Common Pleas of Cambria County, Pennsylvania. All of the partners, designated as "a partnership, trading as GEORGE O. RAGNER & ASSOCIATES," were named as the plaintiffs. The complaint alleged in substance, that on or about January 3, 1953, plaintiffs had entered into a memorandum agreement with the defendant corporation, whereby they had agreed to lease to said corporation a certain tract of coal land and a certain tract of surface land for a period of 5 years, and whereby the latter had agreed to pay to plaintiffs therefor a monthly rental of $833 for the 5-year period commencing April 1, 1953, or a total rental of $49,980; that, in reliance upon such agreement, plaintiffs had expended considerable moneys in purchasing said mineral rights and surface lands, and had presented written evidence of such purchase to the defendant pursuant to paragraph 6 of said memorandum agreement; but that the defendant had thereafter refused to pay such rentals and had denied any liability under said memorandum agreement, and that therefore plaintiffs demanded judgment for said sum of $49,980.

Subsequently, on December 23, 1955, the above-mentioned suit was settled out of court for the sum of $17,500, by a compromise agreement between the parties thereto; and on the same day, a general release in favor of the Pennsylvania Corporation was executed in the name of the partnership and acknowledged by all the surviving members of said partnership including the present petitioner, and also by the administratrix of the estate of the deceased partner, Charles L. Norton. This general release recited that it was executed by said persons, both as partners and administratrix, and also in their individual capacities; and it further recited that it was delivered in consideration for the sum of $17,500, "to them in hand paid" by the Pennsylvania Corporation, "the receipt whereof is hereby acknowledged."

On February 1, 1956, said $17,500 was paid to petitioner pursuant to the above-mentioned agreement between him and the other partners—which agreement was to the effect that he would supply the $30,000 consideration paid by the partnership to the Garfield Company for the coal lands, and that he would thereafter receive all moneys paid by the Pennsylvania Corporation for the use of such lands, up to the amount of said $30,000.

The petitioners, in their joint 1956 income tax return did not include in their income any of the $17,500 which the principal peti-

tioner received as aforesaid. The respondent, in his notice of deficiency, determined that said amount "represents compensation [to petitioner] for loss of profits," and, that the same, was taxable to him as ordinary income. The sole issue here presented is whether such action of the respondent should be approved.

We think that the respondent's determination is erroneous. What happened here, according to the stipulation of facts (which is the only evidence before us), is this. The petitioner and three other men were "at all times material to this proceeding," the members of a *partnership* which operated under the name of George O. Ragner and Associates. This *partnership* entered into a contract with the Garfield Company to purchase certain coal lands and mining rights; and thereafter it actually acquired such properties by a deed, in which the grantee was "George O. Ragner & Associates, a partnership." The partnership obtained the $30,000 consideration paid for said coal lands through an advancement of said sum by petitioner— which advancement was made pursuant to an agreement among the partners, that he would make the same and would receive reimbursement thereof out of the first proceeds up to the amount of his advancement, which the partnership expected to receive from its rental of the properties to the Pennsylvania Corporation.

Thus, it was the *partnership*, and not the petitioner, which acquired the coal lands. And the effect of this, under the applicable statute of the State of Pennsylvania,[2] was that petitioner, like each of the other partners, thereby became a *coowner with his partners* of the properties so acquired—holding as a *tenant in partnership;* that he obtained no right to possess any of such properties for other than *partnership purposes*, without the consent of his partners; and that he acquired no personal right in said coal properties which was assignable, except in connection with assignment of the rights of all the partners in the same properties.

The stipulation of facts further shows that, after the *partnership* so acquired said coal properties, it continued to hold the same; and that it was the partnership, and not petitioner individually, which entered into the memorandum agreement with the Pennsylvania Corporation on January 3, 1953. Also, it was the partnership which filed the suit against said corporation for breach of such memorandum agreement; and it was *all* members of the "partnership trading and doing business as George O. Ragner and Associates" who effected the settlement of said lawsuit, delivered the general release, and acknowledged receipt of the settlement payment of $17,500 on December 23, 1955, which was prior to the year here involved.

---

[2] Pa. Stats. Ann., title 59, sec. 72 (Purdon), which is a reenactment of the Uniform Partnership Act, 7 U.L.A. sec. 25.

In the light of the foregoing facts, we think it follows necessarily, that to the extent said sum of $17,500 represents income for loss of rentals and profits, it was income belonging to the partnership; and it did not represent lost rentals or profits which were owing to the petitioner individually. The 1954 Code, Section 6031, recognizes that a partnership is a separate income-tax-reporting unit which is required to compute its own income, distinct from that of the individual partners.

It is true of course, that to the extent the partnership's recovery of such lost rentals or profits represented partnership *net income*, the petitioner as a member of such partnership would be taxable on his distributive share of such partnership net income, as fixed by the partnership agreement. This would be true, notwithstanding that such partnership income was applied in partial repayment to petitioner of his $30,000 advancement. It similarly would have been taxable to him as his distributive share, even if the partnership had used such income in making payment to a bank or other creditor, or in acquiring capital assets. But the deficiency here involved was not determined by respondent on the ground that it represented petitioner's distributive share of partnership net income, either for the year 1955 when the settlement with the Pennsylvania Corporation was effected, or for the year 1956 which is here involved. Moreover, the parties did not, either in their pleadings, in their stipulation, or on their briefs, proceed on the theory that any question regarding the taxation of partnership income was involved; and they did not present any facts herein, respecting the partnership agreement, the amounts of the distributive shares of the respective partners, the amounts of the partnership's gross income or net income for any year, or as to whether the partnership operated on a calendar year or a fiscal year basis. In these circumstances, no issue regarding partnership income is before us.

We hold, on the basis of the pleadings and the stipulation of facts, that the $17,500 which petitioner received in the taxable year here involved, did not represent "compensation [to petitioner] for loss of profits"; and that the same is not taxable to him, as such. Accordingly, the respondent's determination to the contrary is disapproved.

The stipulation of facts indicates that, in the event of a holding such as we have made, an adjustment will be required relative to legal expenses incurred in connection with the above-mentioned lawsuit.

Reviewed by the Court.

*Decision will be entered under Rule 50.*